UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NADEZHDA BINDAS,                )
                                )
             Plaintiff,         )      CASE NO. C04-514L
                                )
      v.                        )      REPORT AND
                                )      RECOMMENDATION
JO ANNE B. BARNHART,            )
Commissioner of Social Security,)
                                )
             Defendant.         )
_____ )

Plaintiff Nadezhda Bindas appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.  For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI benefits on March 30, 2001.  Tr. 109-112.  She alleged that she became disabled in November, 2000, due to lung and bronchial problems.  Tr. 109.  This application was denied initially.  Tr. 83, 85-89.  Plaintiff then requested reconsideration, indicating that she continued to have bronchitis, dizziness, cataracts, colitis, headaches and numbness.  Tr. 90.   The initial determination was affirmed on reconsideration.  Tr. 84, 91-93.

REPORT AND RECOMMENDATION
PAGE - 1

1    Plaintiff made a timely request for a hearing, which was held on May 16, 2003, before

2    Administrative Law Judge ("ALJ") Arthur Joyner.  Tr. 30-82.  Plaintiff, who was represented

3    by counsel, testified at the hearing.  Tr. 34-58.  Testimony was also provided by medical expert,

4    Wil B. Nelp, M.D., and vocational expert, Paul H. Tomita.  Tr. 59-78.  The ALJ issued a

5    decision on July 16, 2003, finding that Plaintiff was not disabled and thus, she was not eligible

6    for SSI benefits.  Tr. 11-22.  Plaintiff's request for review was denied by the Appeals Council

7    on February 6, 2004, making the ALJ's decision the final decision of the Commissioner.  Tr. 5-

8    7.  Plaintiff timely filed her appeal with this Court.

9                              II.  THE PARTIES' POSITIONS

10    Plaintiff requests that the Court reverse the ALJ's decision and award benefits, or in the

11    alternative, remand for a supplemental hearing.  She contends the ALJ erred by:  1) improperly

12    rejecting Plaintiff's credibility; 2) failing to give substantial weight to the findings of treating

13    physicians with respect to Plaintiff's pulmonary function tests; 3) improperly assessing Plaintiff's

14    visual limitations; and 4) failing to obtain an updated comprehensive pulmonary function exam.

15    Defendant responds that the Commissioner's decision should be affirmed because the ALJ

16    applied correct legal standards and supported his decision with substantial evidence.

17                              III.  STANDARD OF REVIEW

18    The court may set aside the Commissioner's denial of social security disability benefits

19    when the ALJ's findings are based on legal error or not supported by substantial evidence in the

20    record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is

21    defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

22    as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*,

23    881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving

24    conflicts in medical testimony, and for resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d

25

26    REPORT AND RECOMMENDATION
      PAGE - 2

1035, 1039 (9th Cir. 1995).  Where the evidence is susceptible to more than one rational

interpretation, it is the Commissioner's conclusion which must be upheld.  *Sample v. Schweiker*,

694 F.2d 639, 642 (9th Cir. 1982).

## IV.  EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled.  *Meanel v. Apfel*, 172 F.3d

1111, 1113 (9th Cir. 1999).  Disability is defined as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment, which

can be expected to result in death, or which has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for

determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20

C.F.R. § 416.1520.  At step one, the claimant must establish that he or she is not engaging in

any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the

claimant must establish that he or she has one or more medically severe impairments or

combination of impairments.  If the claimant does not have a "severe" impairment, he or she is

not disabled.  *Id.* at § (c).  At step three, the Commissioner will determine whether the

claimant's impairment meets or equals any of the listed impairments described in the regulations.

A claimant who meets one of the listings is disabled.  *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the

impairments listed in the regulations, the Commissioner evaluates the claimant's residual

functional capacity and the physical and mental demands of the claimant's past relevant work.

*Id.* at § (e).  If the claimant is not able to perform his or her past relevant work, the burden

shifts to the Commissioner at step five to show that the claimant can perform some other work

that exists in significant numbers in the national economy, taking into consideration the

claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V. SUMMARY OF THE RECORD EVIDENCE

Plaintiff, a refugee from the Ukraine, was 59 years old at the time of her hearing before the ALJ. Plaintiff had eight years of public education in the Ukraine. Tr. 56, 163. She does not read or speak English. Tr. 56. She last worked in 1999 as a reader of boiler gauges in a heating factory in the Ukraine.[1] Tr. 35. Evidence in the record relevant to Plaintiff's allegations will be incorporated into the discussion below.

## VI. THE ALJ'S DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and she has the following severe impairments: right eye myopia with a cataract, astigmatism and visual deficiency, pulmonary bronchiectasis, and degenerative disc disease. Tr. 15, 21. He determined that these impairments do not meet or equal the criteria of any of the impairments listed in the regulations. *Id.* The ALJ found that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work. Tr. 20, 21. In evaluating Plaintiff's RFC, the ALJ concluded that Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 16, 21.

The ALJ found that plaintiff has no restrictions in sitting; she can stand/walk four hours in an eight-hour workday, in 60-minute increments; and she can occasionally bend and use foot controls. Tr. 21. He also found that plaintiff cannot kneel, crawl, squat, crouch, or climb ropes, ladders and scaffolds. *Id.* Additionally, the ALJ noted that plaintiff should avoid inhaled

---

[1]The vocational expert testified that Plaintiff's past work would most accurately be described as a meter reader under the <u>Dictionary of Occupational Therapy</u>. Tr. 36.

REPORT AND RECOMMENDATION
PAGE - 4

1  agents, such as dust, fumes, smoke, and air pollution.  *Id.*  He found that plaintiff's impairments

2  did not prevent her from performing her past relevant work.  Tr. 22.  Accordingly, the ALJ

3  concluded that plaintiff had not been under a disability as defined in the Social Security Act at

4  any time through the date of the decision and she is not eligible for SSI.  *Id.*

5                              VII.  DISCUSSION

6  A.    ALJ's Assessment of Plaintiff's Credibility

7          Plaintiff argues that the ALJ's finding that she lacked credibility is based on a

8  misstatement of the factual record and is not supported by substantial evidence.  If there is

9  medical evidence of an underlying impairment, the ALJ may not discredit the claimant's

10  testimony as to the severity of symptoms because they are unsupported by medical evidence.

11  *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991).  Unless there is affirmative

12  evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's

13  testimony must be clear and convincing.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)

14  (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (8th Cir. 1989)).

15          The ALJ must identify what testimony he finds not credible and what evidence

16  undermines the claimant's complaints.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (1993).  In

17  assessing credibility, the ALJ may consider, for example: 1) ordinary techniques of credibility

18  evaluations, such as the claimant's reputation for lying and prior inconsistent statements

19  concerning the symptoms; 2) unexplained or inadequately explained failure to seek treatment or

20  to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical

21  evidence tending to discount the severity of subjective claims.  *Rollins v. Massanari*, 261 F.3d

22  853, 856-57 (9th Cir. 2001).

23          Here, the ALJ concluded that plaintiff's "statements concerning her impairments and the

24  nature and extent of her limitations are not entirely credible in light of information contained in

25

26  REPORT AND RECOMMENDATION
   PAGE - 5

the medical reports and other evidence of record." Tr. 16.  Plaintiff challenges the following

statements by the ALJ in support of this conclusion:

> [T]he claimant has some medical impairments and limitations, but not to the
> point of disability.  Other evidence supports that conclusion.  For one thing, the
> claimant has been a caregiver for her very ill, disabled husband, and his care has
> been so demanding that she has allegedly delayed her own medical treatment in
> order to perform her duties as his caretaker.  She does household chores,
> grocery shopping, and cooking. (exhibit 6F:2).  She said that she goes to church
> 3-4 times a month for two-hour services.  She testified that she prepares meals,
> shops, does exercise, and manages her personal care.

Tr. 19.  Plaintiff argues that the ALJ's findings regarding her activities of daily living do not

accurately portray the record because her testimony at the administrative hearing reflects that

the caretaker for her husband helps with the household chores, and does the shopping, cleaning,

and bill paying.  She contends, therefore, that the ALJ's inaccurate recounting of her functional

capabilities does not constitute clear and convincing reasons to reject her credibility.

It is appropriate for the ALJ to note any of the claimant's daily activities which may be

inconsistent with the presence of a condition that would preclude work. *Curry v. Sullivan*, 925

F.2d 1127, 1130 (9th Cir. 1990).  However, in the present case, the ALJ's description of

Plaintiff's daily activities is somewhat misleading.  In simply listing these activities out of

context, the ALJ fails to specifically mention and give reasons for discrediting Plaintiff's

testimony that not all the activities occurred daily, that she has received  assistance from a chore

service worker with grocery shopping and household chores for one and one-half years, that a

caretaker comes daily to assist her husband, and that she often requires rest between activities

due to fatigue and shortness of breath.   Moreover, courts in the Ninth Circuit have recognized

that disability claimants should not be penalized for attempting to lead normal lives in the face of

their limitations.  *See e.g., Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a

disability claimant need not "vegetate in a dark room" in order to be deemed eligible for

benefits.); *see also Fair v. Bowen*, 885 F.2d 596, 603 (9th Cir. 1989) ("Many home activities

REPORT AND RECOMMENDATION
PAGE - 6

1   are not easily transferable to what may be the more grueling environment of the workplace,

2   where it may be impossible to periodically rest or take medicine).  Thus, I conclude that the

3   ALJ's listing of Plaintiff's daily activities in this case does not constitute clear and convincing

4   reason for discrediting Plaintiff's testimony.

5          However, the ALJ remaining reasons for finding that Plaintiff was not entirely credible

6   are clear and convincing.  He noted that Plaintiff had reported earlier that she did some light

7   cooking and cleaning, while at the same time reporting that she could not reach, handle or finger

8   objects.  Tr. 19.  The ALJ found that while claimant asserted a need to lie down and raise her

9   feet during the day, there is no evidence of an impairment that would cause such restrictions.

10  *Id.*   The ALJ also noted that Plaintiff has avoided a liver biopsy because she was afraid of

11  bleeding, and she has simply avoided cataract surgery, pulmonary testing, hepatitis treatment,

12  and other forms of therapy.  Tr. 20.  A claimant's testimony "may be less credible if the level or

13  frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

14  records shows that the individual is not following the treatment as prescribed and there are no

15  good reasons for this failure.  Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *7; *see also Fair v.*

16  *Bowen*, 885 F.2d at 603.  A claimant's testimony "may be less credible if the level or frequency

17  of treatment is inconsistent with the level of complaints, or if the medical reports or records

18  shows that the individual is not following the treatment as prescribed and there are no good

19  reasons for this failure.  Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *7; *see also Fair v.*

20  *Bowen*, 885 F.2d at 603.  Here, the ALJ indicated that the failure to follow through with

21  medical treatment suggest that Plaintiff is able to function reasonably well despite these

22  conditions.  *Id.*

23

24         Accordingly, because the ALJ identified several additional clear and convincing reasons,

25

26  REPORT AND RECOMMENDATION
    PAGE - 7

1   I find that he did not err in finding Plaintiff's testimony not entirely credible.

2   B.   ALJ'S Assessment of Plaintiff's Lung Function

3          Plaintiff claims that the ALJ's implicit finding that her pulmonary lung function is not

4   severely disabling and does not meet the listing of impairments is not supported by substantial

5   evidence.  She contends that the ALJ implicitly adopted the opinion of medical advisor Wil

6   Nelp, M.D., a specialist in radiology and internal medicine, who did not find Plaintiff's

7   pulmonary tests credible.  Plaintiff argues that Dr. Nelp's opinion as a non-examining, non-

8   treating physician, did not provide the ALJ with specific and legitimate reasons supported by

9   substantial evidence to reject the findings of Plaintiff's treating doctor.

10          As a general rule, more weight should be given to the opinion of a treating source than

11   to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647

12   (9th Cir. 1987).  If the treating doctor's opinion is contradicted by another doctor, the

13   Commissioner may not reject this opinion without providing "specific and legitimate reasons"

14   supported by substantial evidence in the record for doing so.  *See Lester*, 81 F.3d 821, 830 (9th

15   Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989).

16          The record in this case reflects that on May 11, 2001, Plaintiff's treating physician,

17   Valentina Kulakivsky, M.D., indicated in a letter to the Division of Disability Determination

18   Services that Plaintiff's "PFT's (pulmonary function tests) show moderate to severe decrease of

19   lung" function.  Tr. 207.  This conclusion was based on results from three PFTs taken by

20   Plaintiff: the first on April 13, 2001 (Tr. 223), and two others on April 20, 2001, both before

21   and after medication (Tr. 217-219).  The record also contains reports from pulmonary function

22   tests administered to Plaintiff on November 14, 2001, by technician Joanie Anderson, RRT.

23

24

25

26   REPORT AND RECOMMENDATION
     PAGE - 8

(Tr. 229-232).  In comments at the bottom of these reports, the technician notes:

> Patient was unable to produce acceptable and reproducible Spirometry data due
> to SOB [shortness of breath] and as she says, "too weak.."  She tried the FVC
> maneuver [more] than 15 times w[ith] 2-3 errors each.  We also attempted
> DLCO many times to no avail.  She became very frustrated to the point that she
> refused to do a post bronchodilator FVL because she had palpitations from a
> breathing treatment in the past.  I explained to her that we did not [get] the
> information the DSHS office had requested, she understood but "could not go
> on."

Tr. 229, 231.  Additionally, in a May, 2003 letter regarding Plaintiff's upcoming disability

hearing, Daniel Talley, M.D., of Valley Internal Medicine, Inc., P.S. where plaintiff received

treatment since 2002, states:

> Pulmonary function tests were scheduled for May 15, 2003.  However the
> patient was unable to perform the maneuvers necessary to obtain adequate data
> to determine lung capacity and function.  These pulmonary function tests were
> therefore not of any benefit in determining her degree of diminished lung
> capacity.

Tr. 289.

The ALJ concluded that Plaintiff's April, 2001 pulmonary function testing showing a

significant decrease in ventilation was not a valid indicator.  Tr. 16.   In support of this

conclusion, the ALJ relied not only on Dr. Nelp's opinion, but also on the other evidence in the

record of Plaintiff's attempts at the testing.  First, the ALJ noted that in regards to the

November, 2001 pulmonary function testing, Plaintiff was not cooperative, and thus, the ALJ

concluded that test was not acceptable because of her poor effort.  Tr. 17.   His conclusion is

consistent with the comments by the technician who administered the test.  Likewise,

presumably in regards to the tests attempted in May 2003, the ALJ notes that Dr. Talley did not

find the pulmonary test data to be of any benefit.  Tr. 18.

Additionally, referring to Dr. Nelp's comments about the April, 2001 tests, the ALJ

noted that "the pulmonary tests were unbelievably low (exhibits 5F; 7F), but they were done

without interpretation or comment, and thus were not a proper measure of the claimant's

REPORT AND RECOMMENDATION
PAGE - 9

1   functioning." Tr. 18.  The ALJ also points to Dr. Nelp's opinion that if the claimant's

2   pulmonary function testing were a true measure of her condition, she would have presented on a

3   stretcher with an oxygen tank.  Tr. 18-19.  Moreover, in a discussion of this issue during the

4   administrative hearing, the ALJ indicated that even if he were to credit the first test results from

5   Dr. Kulakivsky as a valid test, the test alone is not sufficient to support the listing because it

6   does not meet the 12-month period test.  Tr. 73-74.

7          These reasons identified by the ALJ demonstrate that he properly evaluated the objective

8   medical evidence and articulated specific and legitimate reasons, supported by substantial

9   evidence in the record, for concluding that Plaintiff's pulmonary function tests were not a valid

10  indicator.  Accordingly, the ALJ did not err in finding that Plaintiff has some pulmonary

11  limitations, but that there was insufficient evidence to establish that her pulmonary lung function

12  meets or equals a listing.

13  C.    ALJ's Assessment of Plaintiff's Visual Impairments

14         Plaintiff claims that the ALJ's factually inaccurate portrayal of her visual impairments is

15  not supported by substantial evidence.  She argues that the ALJ appears to accept Dr. Nelp's

16  reading of the medical record that the claimant's only real visual problems are a slight cataract

17  in the right eye and a need for glasses.  Plaintiff contends that this portrayal of her visual

18  problems is not supported by the opinion of her treating ophthalmologist, Dr. John E. Lunnen,

19  OD, Ph.D., and that substantial evidence does not support the ALJ's conclusion that she could

20  perform her past relevant work given the documented deterioration of her visual impairments,

21  as well as the substantial deterioration of her lung condition.

22         In his decision, the ALJ acknowledges and accurately summarizes Dr. Lunnen's

23  description of Plaintiff's visual problems in reports regarding her treatment in January, 2000 (Tr.

24  16, 183); June, 2002 (Tr. 17, 282); and April, 2003 (Tr. 18, 274).  In fact, in the ALJ apparently

25
    REPORT AND RECOMMENDATION
26  PAGE - 10

1   adopts Dr. Lunnen's April, 2003 diagnosis that Plaintiff has severe myopia, astigmatism, and a

2   cataract in the right eye because the ALJ lists those conditions, as well as visual deficiency,

3   among Plaintiff's severe impairments.  Tr. 15.

4        The ALJ also notes the comment by medical expert Dr. Nelp indicating that Plaintiff

5   needed glasses, but she has not obtained any.  (Tr. 19, 62).  This comment is consistent with Dr.

6   Lunnen's April, 2003 treatment notes in which he states, "[Plaintiff's] best corrected visual

7   acuity was 20/80 in the right eye and 20/25 in the left eye.  *I recommended a balance lens for*

8   *the right* because of the large difference in lens power between the right and left eye."  Tr. 274

9   (emphasis added).  However, there is no evidence in the record that Plaintiff followed this

10  recommendation.  Furthermore, although Dr. Lunnen's June, 2002 treatment reports states that

11  he "recommended evaluation and possible extracapsular cataract extraction for the right eye"

12  (Tr. 282), there is no evidence in the record that Plaintiff ever had cataract surgery.

13       In light of these facts, I conclude that the ALJ has provided an accurate description of

14  Plaintiff's visual impairments, and given Plaintiff's failure to pursue recommended treatments,

15  the ALJ did not err in finding that her visual difficulties are not particularly bothersome in a

16  general sense.  I also conclude that the ALJ did not err in finding that Plaintiff could still

17  perform her past relevant work (meter reader) given the testimony of  vocational expert, Paul

18  Tomita, that she would not be precluded from reliably doing that job even with added problems

19  of vision such that she cannot see out of the right eye.  (Tr. 77).

20  D.    ALJ's Failure to Obtain Additional Evidence

21       Plaintiff argues that the ALJ erred in failing to obtain an updated comprehensive

22  pulmony function examination.  "In Social Security cases the ALJ has a special duty to fully and

23  fairly develop the record and to assure that the claimant's interests are considered."  *Brown v.*

24  *Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).  It is the agency's responsibility to develop a

25

26  REPORT AND RECOMMENDATION
    PAGE - 11

1    claimant's complete medical history for at least the preceding twelve months, and it must make

2    "every reasonable effort" to obtain the claimant's medical records.  42 U.S.C. § 423(d)(5)(B);

3    20 C.F.R. §§ 404.1512(d), 416.912(d).  If the evidence received does not adequately assist the

4    agency in making a determination, the agency will re-contact the claimant's medical sources to

5    determine whether there is readily available additional information.  20 C.F.R. §§ 404.1512(e),

6    416.912(e).

7         If information is not readily available from the medical sources, the agency should direct

8    the claimant to receive a consultative examination.  *Id.* at §§ (f).  The agency has "broad

9    latitude" in so doing.  *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001).  Consultative

10   examinations should be ordered when the evidence in the record is insufficient, or when the

11   record presents a "reasonable possibility that a severe impairment exists" and an examination is

12   necessary or would be helpful to resolve the issue.  *Id.*, *Hawkins v. Chater*, 113 F.3d 1162,

13   1167 (10th Cir. 1997).  *See also*, *Armstrong v. Commissioner of the Soc. Sec. Admin.*, 160 F.3d

14   587, 589-90 (9th Cir. 1998); *Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991).

15        In this case, the ALJ declined to order another pulmonary function test after the

16   administrative hearing because he had received a letter from Plaintiff's treating physician, Dr.

17   Talley, indicating that on May 15, 2003, the day before the hearing, Plaintiff had been scheduled

18   for pulmonary function tests but she was unable to perform the maneuvers necessary to obtain

19   adequate data to determine lung capacity and function.  Tr. 78, 289.  The ALJ concluded that

20   this information was dispositive that additional pulmonary testing was unnecessary in light

21   Plaintiff's status on the day before the hearing.  Because the record contains earlier evidence of

22   Plaintiff's inability to perform the pulmonary test (Tr. 229-232), as well as this evidence of her

23   inability to do so the day before the hearing, I conclude that the ALJ did not err in not ordering

24   another pulmonary function test.

25

26   REPORT AND RECOMMENDATION
     PAGE - 12

1

VIII.  CONCLUSION

2

The Commissioner's determination to deny Plaintiff SSI benefits is supported by

3   substantial evidence and is free of legal error.  Based on the record evidence, the undersigned

4   recommends that the Commissioner's decision be AFFIRMED.  A proposed Order accompanies

5   this Report and Recommendation.

6

DATED this 31st day of August, 2005.

7

8

9

Monica J. Benton
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   REPORT AND RECOMMENDATION
PAGE - 13